## Cherkasky, to use of Domsky, v. Pride et al.

*Attachment execution—Stock of foreign corporation—Acts of March 29, 1819, June 16, 1836, and May 5, 1911.*

1. The stock of a foreign corporation is not subject to attachment execution in Pennsylvania.

2. There is nothing in the Acts of March 29, 1819, 7 Sm. Laws, 217, or June 16, 1836, P. L. 755, to authorize the attachment of such stock.

3. In such case, it is immaterial that the certificate is in Pennsylvania, that the foreign corporation is registered and has an office in the State, and that all of its officers and plaintiff and defendant in the execution reside in Pennsylvania.

4. The reason for the freedom of shares of a foreign corporation from liability to attachment is that the *situs* of stock is the domicile of the corporation.

5. The mere presence of the certificate is not sufficient to bring into the foreign state the property of which the certificate evidences the ownership.

6. Section 14 of the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, does not apply where the corporation whose stock it is sought to attach is domiciled in a state in which this uniform law has not been enacted.

Rule to set aside *fi. fa.* against garnishee to have shares of stock in foreign corporation sold as property of defendant. C. P. No. 4, Phila. Co., March T., 1923, No. 6248.

*John McClintock* and *J. R. Wilson*, for plaintiff; *Benj. Byer*, for defendant.

FINLETTER, P. J., Jan. 21, 1928.—The question before us is whether, under the circumstances of this case, the stock of a foreign corporation is subject to attachment execution. The garnishee, a foreign corporation, admitted in its answers that it held two certificates of its own stock, which were the property of the defendant.

It is not denied by the defendant that a foreign corporation may be made a garnishee (Barr *v.* King, 96 Pa. 485), but it is asserted that certificates of stock of a foreign corporation cannot be attached in execution in the hands of any garnishee, individual or corporate, foreign or domestic.

The facts upon which the plaintiff relies are (1) that the certificates are within the jurisdiction, and were seized by the sheriff under the attachment; (2) that the corporation whose stock is involved is registered in Pennsylvania and maintains an office here; (3) all its officers and the plaintiff and defendant reside here.

The principal office of the corporation is at Wilmington, Delaware. A judgment was entered against the garnishee upon its answers recited above, and an order made finding that it had in its possession property of the defendant that "was subject to the attachment," to wit, the two certificates of stock above referred to.

The terms upon which the garnishee holds the certificates do not appear, except as to two shares. These it holds under a voting trust agreement entered into by all the stockholders. Its possession of the other forty-nine shares is not explained. A *fi. fa.* was issued against the garnishee to have the shares sold as the property of the defendant. The defendant now moves

Cherkasky, to use of Domsky, v. Pride et al.

to have the *fi. fa.* set aside on the ground that shares of a foreign corporation are not attachable in execution.

The fundamental question is the existence or non-existence, within the jurisdiction, of the thing attached: Straus *v.* Chicago Glyc. Co., 46 Hun (N. Y.), 216, 108 N. Y. 654. Note 55 L. R. A. 801.

The stock of a corporation could not be attached at common law (6 Corpus Juris, 212; 28 Corpus Juris, 167, § 213), but has been made liable to attachment by statutory enactment in most of the states, including Pennsylvania. See Acts of March 29, 1819, § 2, Purd. Dig. 1545, and June 16, 1836, § 22, P. L. 755. But even in states where such statutes exist, and notwithstanding their general language, it has been held that they do not extend to the stock of foreign corporations: 5 Fletcher Cyc. Corp., § 3439, page 5640. This is the rule in Pennsylvania: Christmas *v.* Biddle, 13 Pa. 223; Moys *v.* Union Trust Co., 276 Pa. 58.

We might stop at this point; for, if the statutes referred to above do not authorize the attachment of stock of a foreign corporation, such a corporation remains in the position all were in at common law, for there is no other statute in this State upon the subject.

But it is argued that the case before us is differentiated from the general rule by the facts referred to above; that is, the presence here of the stock certificate; the registration of the corporation in Pennsylvania; the presence of all of its officers here, and the residence of the defendant here. It is also argued that if no one of these facts is sufficient to make the case exceptional, their combined effect is to have that result.

The reason for the freedom of shares of a foreign corporation from liability to attachment is that the *situs* of stock is at the domicile of the corporation. The mere presence of the certificate is not sufficient to bring into the foreign state the property, of which the certificate evidences the ownership. The inability of the court of the attachment to enforce its process against the stock or the corporation is also referred to in the authorities.

1. We need not discuss the effect of the presence of the certificates here. The ruling of the Supreme Court in Christmas *v.* Biddle *(supra)*, approved in Moys *v.* Union Trust Co. *(supra)*, negatives this as a basis of jurisdiction. And this is the general rule: 5 Fletcher Cyc. Corp., § 3141, page 485, and § 3439, page 5640.

2. What is the effect of registration? The statute provides: "No foreign corporation shall do any business in this Commonwealth until said corporation shall have established an office or offices and appointed an agent or agents for the transaction of business:" Act of April 22, 1874, § 1, P. L. 108; Purd. Dig. 1730.

The purposes of this law are to aid in the levy of taxes upon the company, and to afford the citizen who dealt with it a means of bringing it unto the courts of the state wherein it transacted business. It was not intended to deal with the stockholder personally or with his property, nor was there any idea of interfering with or regulating the internal management of the corporation, or the relations of stockholders to the corporation. With these subjects the outside world which dealt with it had nothing to do. The domicile of the company remains in the state where it was created, notwithstanding its agents travel abroad in the transaction of its business. That phrase, as it is used in the statute, refers only to external dealings of the company itself.

It has been held that, even when a foreign corporation is registered, its property can be attached in foreign attachment in the state in which it is

registered; a ruling that could not be made if registration had the effect of making a foreign corporation a resident: Pierce v. McLaughlin Co., 28 W. N. C. 311.

"It does not follow from the fact that the laws of the state require as a condition of doing business in that state that foreign corporations shall submit to be sued there, that those laws require the shareholders of such a corporation to submit their shares to the dominion of that state, and thereby subject them to execution and attachment within its borders: 5 Fletcher Cyc. Corp., §. 3439, page 5641; Ashley v. Quintard, 90 Fed. Repr. 84.

3. Nor does the presence of its officers bring the corporation itself within the foreign state. The corporation is a different thing from its officers, and cannot be transported upon their persons: Plimpton v. Bigelow, 93 N. Y. 592; Straus v. Chicago Glyc. Co., 46 Hun (N. Y.), 216, 108 N. Y. 654.

4. Does the presence of the defendant bring the property represented by the shares within the State? The character of such property requires an answer in the negative to this question. Certificates are not debts of the corporation, owned by the stockholders, so as to follow his person to the jurisdiction where he is. They are merely evidences of his interest in the corporation. That interest is the right to receive dividends upon its stock when declared, and, on dissolution, to share in its property, and meanwhile to govern it by his vote. All that the sheriff holds in this case is the written proof of the defendant's rights, the deed to his property. He cannot by a sale of the paper make it prove anything different.

Nor can the presence of the defendant here change the situs of the property he owns. He cannot, by coming to Philadelphia with the deed in his pocket to a house he owns in Wilmington, bring the real estate here.

None of these facts change the situs of the stock, neither the registration of the corporation, the presence of its officers, the presence of the defendant nor the presence of the certificates.

It is argued that the Act of May 5, 1911, §§ 13, 14 and 22, P. L. 126, subjects the stock of foreign corporations to attachment. Section 14 provides that "the creditor shall be entitled to such aid, . . . by injunction and otherwise, in attaching such certificate or in satisfying the claim by means thereof as is allowed by law or in equity in regard to property which cannot be readily attached." But by section 22 the "certificates" and "shares" referred to in the body of the act are those of this State or of another state "whose laws are consistent with this act;" provisions foreshadowed by the title of the act when it states its purpose to "make uniform the law."

We know of no statute of Delaware, nor does the plaintiff allege the existence of one, that is "consistent" with the Act of 1911. The supplement for 1927 to the Uniform Stock Transfer Act, vol. 6, published by Edward Thompson & Company, contains a list of states which have adopted the act—Delaware is not among them. So far as it relates to shares of a foreign corporation, the statute is quite opposed to the previously existing rule.

We are of opinion, for the reasons we have given, that we must not only make absolute the rule to set aside the fi. fa., but we must reconsider our order entered on Nov. 12, 1927, that the garnishee holds the shares "subject to the attachment."

We were not aware when we entered that order that the shares with which we were dealing were shares of a foreign corporation.

We cannot order the sheriff to return the certificates to the defendant, as the latter asks. We are not informed by what title the garnishee, from whom

Cherkasky, to use of Domsky, v. Pride et al.

the sheriff took the certificates, holds them. All we can order is that the sheriff return them to the person from whom he took or received them.

And now, Jan. 21, 1928, the rule is made absolute, in so far as it provides for setting aside the fi. fa. The order entered on Nov. 12, 1927, is vacated; and it is adjudged that the garnishee has in its possession no property of the defendant that is subject to the attachment.